Jones v. Fennimore.

## JONES, SCOTT, AND CO. v. FENNIMORE.

By provision of the statute, after the jury have retired to agree upon their verdict it is too late for the plaintiff to claim a non-suit.

Where a verdict had been found for the defendant upon an insufficient plea in avoidance, a judgment *non obstante veredicto,* may properly be rendered for the plaintiff.

When the reasons and evidence for a new trial appear of record, and come within recognized rules of law, the question may very properly become the subject of review and correction in the supreme court.

If, by any reasonable cause, a party has been unable to present the merits of his case to the jury, a new trial should be granted to him.

The assignment of a judgment by a debtor to several creditors, as a collateral security to guaranty the payment of their demands, does not amount to an accord and satisfaction.

To constitute a legal bar to an action, the satisfaction must have been full and complete; and it should be alleged and proved that the assignment of the judgment was made and accepted in full payment of the demand, and not merely as security or contingent means of payment.

When a debtor suffers a note to remain in the hands of his creditor, and takes no receipt against it, a strong presumption is raised that it has not been satisfied.

A judgment rendered against plaintiffs in the court below, in consequence of their own mismanagement and negligence, was reversed in the supreme court at their costs.

ERROR, *to Muscatine District Court.*

*W. G. Woodward* and *S. C. Hastings,* for the plaintiffs in error. In the opening argument, the following authorities were submitted by Hastings : As to judgment, *non obstante veredicto,* &c., Stephens on Pl., 97 ; Chit. on Con., 767, 768, 770 ; 2 Gill. and John., 508. As to plaintiff's right to a voluntary non-suit, 2 Wend., 295 ; Graham's Pr. 310.

*S. Whicher,* for the defendant. 1. The plaintiff claims a reversal of the judgment, because the court refused him a non-suit. Our statute forbids it after the jury leave the box. *Rev. Stat.,* 472, § 18. In this case, it was not asked until they had returned the verdict.

Jones v. Fennimore.

2. That the court refused a new trial. Admitting for a moment, that this court can reverse, for this cause; is there sufficient matter shown on the record, to satisfy this court that the court below erred in this? The note was settled, by giving a collateral security, with which the plaintiff rested more than four years, without any notice that the paper he received, was unproductive, or unavailing; and without an offer to return, or reassign. No authority read or cited by plaintiff, shows that a party can maintain an action, or the original consideration, without an offer to return the collateral security, if he has received any. And is it not plainly inferrable from the record, that the defendant was willing to pay the whole note, if the plaintiff would cancel or reassign the judgment? What terms were alluded to by defendant, with which he required a compliance, other than a re-assignment, before he would pay? Under the circumstances of the case, made by the record, the defendant takes the ground that the jury were right in treating the negotiation of Sept. 25, 1842, as an accord and satisfaction of the note.

It is stated in 2 Greenl. Ev., § 31, that "whether an accord with a tender of satisfaction is sufficient without acceptance, is a point upon which the authorites are not agreed. It is, however, perfectly clear, that a mere agreement to accept a less sum in composition of a debt is not binding, and cannot be set up in bar of the original contract." Again, in the same section, it is said, "But whether, where the agreement is for the performance of some collateral act upon sufficient consideration, a tender of performance is equivalent to a satisfaction, seems still to be an open question, though the weight of authority is in the affirmative."

The question stated in the last extract seems so clear upon the principles of common sense, that it may well be wondered how any combination of the artificial rules of law can suggest a different result. The matter has vexed the courts of common law for centuries, yet we cannot recognize any principle, which has been clearly set forth, or steadfastly adhered to.

The whole difficulty appears to be referable to a curious doctrine which gained favor with the courts, and is stated in *Allen v. Harris*, 1 Ld. Raym., 122. It was there held that a promise for a promise constituted a mere *nudum pactum*. In accordance with this idea, an accord without satisfaction was held bad. But the cases in which this was originally decided, though they announce the result, do not contain the reasons upon which the rule is said to be founded. One of the earliest cases is reported in 43 Edw. III., 33. That was an action of trespass, and the plea was an accord, but there was no allegation that the plaintiff had performed his part, for which reason it failed: In 16 Edw. IV., 8, Catesby contended that a plea of accord was good, and Littleton held with him. This case seems to be wholly overruled in *Robinson* v. *Leavitt*, 7 N. H. 73, and in *Wentz v. DeHaven*, 1 S. & R. 312. The case reported in 17 Edw. IV., 8, was an action of trespass, and a plea of tender and refusal was held bad. Of course, no tender can be made in the case of unliquidated damages. The next case is in 6 H. VII., 10. This was an action of trespass, and no tender was alleged. Consequently the plea of accord failed. These three cases of trespass are constantly cited to support the doctrine that an accord without satisfaction is no bar. But they all turn upon the well known rule that in an action *ex delicto* a tender cannot be pleaded. Yet in *Peytoe's case*, 9 Co., 77, the court saw fit to recapitulate them, and by a misconstruction of them to introduce a cardinal error into the law. Peytoe's case was an action of ejectment, and a question seems to have been raised in the course of the discussion, by the sergeants, which had nothing to do with the case. The question was this, "whether, if a man be bound to do any collateral act, the obligor cannot, by accord between them, give money or some other valuable thing in satisfaction, as well as where he is bound to pay money, in which case he may give a horse or any other valuable thing in satisfaction thereof?" The court, "to satisfy the said question moved amongst the sergeants," saw fit to go over the whole law of accord and satisfaction, and establish a number of principles

which really do not result from the authorities they cite. They there enunciate the rule, which does not seem to have been ever fairly stated before, that if the thing is to be performed at a day to come, tender and refusal are not sufficient without actual satisfaction and acceptance.

The influence of this blunder may be easily traced, though it was a great while before the question came fairly before the court. In *Tassall* v. *Shane*, Cro. Eliz., 198, the case failed, among other things, for want of a tender. In *Case* v. *Barber*, Sir T. Raym., 450, the statute of frauds came in the way. *Allen* v. *Harris*, 1 Ld. Raym., 122, was merely a case of the liquidation of damages. In *Lynn* v. *Bruce*, 2 H. Black, 317, the court relied wholly upon Lord Coke. In *Preston* v. *Christmas*, 2 Wils., 86, it was held, that there was no good satisfaction, because an equity of redemption was no satisfaction, which is not now true.

In 1810, the whole matter came before Lord Ellenborough, at nisi prius, in the case of *Bradley* v. *Gregory*, 2 Camp., 385; and either because he forgot some of the earlier decisions, or because his great mind was superior to such quibbling, he took a position before unheard of. A tender had been made agreeably to the terms of a previous accord, and Lord Ellenborough held that as the defendant had done all in his power to complete the compromise, a party should not be permitted to say that there had been no satisfaction, if the satisfaction had been offered. It would be unjust.

Yet twenty-seven years after, Ch. Just. Tindal, in the C. B., reiterates the doctrines of Lord Coke, and thinks the current of authority too strong for contradiction. In the state of New York, the doctrine of Lord Ellenborough has been sustained in the case of *Coit* v. *Houston*, 3 Johns. Cas., 243, where the court expresses its opinion.

The second case stated in Prof. Greenleaf's work seems perfectly clear upon principle. The original compromise evidently amounts to an independent executory contract of imperfect obligations. It may certainly be decomposed into the four essential elements to which all contracts are reducible; com-

petent parties, a subject of the contract, a consideration for it, and an actual consent. The first and most natural objection is the supposed inadequacy of the consideration. *Bayley* v. *Homan*, 5 Bing., 920, *Bryant* v. *Gale*, 5 Ver., 421 ; and if the agreement should be stripped of its attending circumstances, it is hardly to be supposed that any one would relinquish any part of a just claim, without a motive. But to neglect these surrounding circumstances, would be to omit the most important part of the transaction. And so says the law. Commencing with the case of *Cumber* v. *Wane*, 1 Strange, 425, the courts have repeatedly declared, that a security of an equal sum cannot be pleaded in an action for the larger one. All this results naturally enough from the doctrine of consideration, but it also results that the creditor may violate his promises with impunity, though freely and honestly given, and with as much solemnity as attends the ordinary transactions of life. *Brooks et al.* v. *White*, 2 Metc., 283. The natural influence of such a rule would be to promote bad faith in the business world, and the courts have readily seized upon any circumstances which would obviate the theoretical difficulties of extinguishing a debt by the payment of a less sum. Thus, where there is any collateral act to be performed, which may raise a technical legal consideration as against the payee, the courts have refused to apply the rule of *Cumber* v. *Wane*. For instance, if the smaller sum is to be paid at an earlier time, or at a more convenient place, or if a third person is to become responsible, or if it is to be paid in articles of a different nature ; in all these cases, subject to a few qualifications which will be mentioned in their place, the law will protect and enforce the compromise. There is one more class of cases of a more recent date, where the ingenuity of the bench has been taxed to the utmost to overcome the technical difficulties, which are set forth in *Cumber* v. *Wane*. These are the bankruptcy cases, where the debtor enters into a composition with his creditors to pay a certain per centage of their respective demands, upon which he is to receive a complete release, the courts deciding that the consent of the other creditors consti-

tutes a sufficient consideration to save these contracts from any technical objections.   Such exceptions prove the narrowness of the original rule.; and all must admit them to be in accordance with strict justice, and well calculated to preserve the harmony of society.   And it is not a little amusing that the old judges should have attacked these compromises, quoting the maxim, " *Interest reipublicæ ut sit finis litum.*"   Their advocates have since adopted the same maxim, and with far more justice.

On these grounds, we venture to lay out of the case all objections founded upon any supposed inadequacy of consideration.   The next serious objection we have already alluded to by calling such compromises contracts of imperfect obligation. This objection, upon principle, is far from clear, but is, nevertheless, so well fortified by authority that it must be admitted that an accord executory is no bar.   It must be executed.   The rule is laid down in Peytoe's case, being one of the gifts of the old judges, contained in their lecture to the sergeants.   It has since been generally followed, and Mr. Wallace, in his elaborate note to the case of *Cumber* v. *Wane*, (1 Smith's Lead. Cas. 253,) deduces it as an indispensable requisite to a good accord and satisfaction.   It would be more consistent with common justice to pay more respect to promises, and to recognize the obligation of a contract operating as an accord and satisfaction, with a promise to accord at a future day, as well as of a contract for the sale of goods, with a promise to deliver at a future day.   By the civil law, the obligation developed by a novation, which seems closely to resemble an accord and satisfaction, differs in regard to the necessity of execution.   A novation is the substitution of a new debt for an old; but it does not follow that a new debt must be discharged before the creditor loses his remedy on the old.   On the contrary, the whole debt is as completely extinguished, as it would be by an actual payment; so that (to state a strong case,) if one of several debtors, *in solido*, should contract a new engagement with the creditor, as a novation of the former debt, the former debt would be extinguished, and his co-debtors released.   Poth.

Obl. *n. 563.* And in a delegation, which is but another name for a novation, whereby a third person assumes the obligation of the original debtor, the discharge of the latter does not depend on the payment of the debt, by the party delegated, but is completed by the delegation, unless it is expressly stipulated that the debtor shall, at his own risk, delegate another. But these provisions are peculiar to the civil law, and we, who number the common law among our Anglo-Saxon inheritances, must take it as it is.

In the civil law, the principle is set forth in the case of the *pactum constitutæ pecuniæ*, which is a new promise to discharge a previous obligation, and the debtor, by offering to perform this promise, can be liberated from the previous obligation, *per exceptionem pacti*, as it is called. The effect of such an obligation is thus illustrated by Pothier, Obl. part ii., c. 6, sec. 9, § 4 : " Suppose a person, who owes me thirty pistoles, has promised to give me six gallons of wine, of his own vintage, in payment, this pact does not destroy the former obligation. I may, by virtue of that, demand from my debtor the thirty pistoles, and my demand may, *ipso jure*, be supported; but as I have agreed, by the fact that he may pay me, instead of this sum, six gallons of his wine, he may, *per exceptionem pacti*, on offering such wine, require to be liberated from my demand of thirty pistoles; his former obligation, which was a pure and simple obligation to pay me precisely the sum of thirty pistoles, receives, by the pact, a modification, and becomes an obligation of thirty pistoles, with the power of paying the six gallons of wine in its stead."

Now, governing our case by the analogies, does it not result that every accord is a contract of which, what is technically called satisfaction, is a condition precedent—that the requisite *consensus animorum* takes place at the time of the compromise; and that, after that compromise has been effected, it is no longer discretionary with the creditor, whether he shall be bound by his promise, but he must be satisfied with a fair performance.

Why, when it is so generally admitted, in every other case

Jones *v.* Fennimore.

of contract, that a tender and a refusal constitute a sufficiently good performance of a condition precedent, it should be denied in cases of accord, is difficult to perceive. The whole trouble originated in the utter inability of the old common-law judges to understand the fluctuating value of a *chose in action.* For a long time, they held that they were not assignable. Now, there are some who hold that their value is the same under all circumstances.

We are not enthusiastic admirers of the civil law, nor do we wish to do injustice to the memory of the early judges. We thought, however, that the present case might afford an amusing instance of the obstinacy with which one of the old common-law fortifications has withstood repeated attacks by the civilians and the merchants. We thought it also not a little amusing, that in constitutional England, and almost under the shadow of the parliament-house, they should have succeeded, by misrepresenting the year books to the sergeants, in ingrafting a rule upon the common-law, which exerts almost as much influence upon the transactions of daily life as any statute of the realm.

In regard to the position taken by Prof. Greenleaf, although it is so consistent with common sense, and it is to be hoped it will be adhered to in cases which may arise hereafter, it ought not, perhaps, to be said that " the weight of authority " is on that side, unless the clear and manly decision of Lord Ellen-borough is thought to outweigh all the doctrines of Lord Coke and his followers.

There seems to be three classes of accords. The first includes cases of torts, in which clearly there can be no tender. The second is represented by the case of *Cumber* v. *Wane,* and includes those cases where there is an agreement to pay a lesser sum for a greater. In these cases, there is the technical defect of the want of consideration. The third embraces those cases, where there is some new consideration moving at the time of the accord. In these the intent governs. *Brook et al.* v. *White,* 2 Metc. 283.

The ruling in Coke's Report, set up here to negative the

idea, in a question before a jury, of an accord and satisfaction, is almost the only relic of the subtile law of his time, which has survived the inroads of the commercial system.   We conclude, then, that this question being submitted to a jury, without any instruction from the court, that their decision is not only in accordance with the weight of authority, but in accordance with the enlightened spirit of the age; and the court did not err in refusing a new trial.

3. That the court refused to give a judgment *non obstante veredicto ;* and to sustain this, we are referred to Stephen on Pleading, p. 97, which says :   " This motion is made in cases where, after a pleading by the defendant in confession and avoidance, as, for example, a plea in bar, and issue joined thereon, and verdict found for the defendant, the plaintiff, on retrospective examination of the record, conceives that such plea was bad in substance, and might have been made the subject of demurrer on that ground.   If the plea was itself substantially bad in law, of course the verdict, which merely shows it to be true in point of fact, cannot avail to entitle the defendant to judgment; while, on the other hand, the plea, being in confession and avoidance, involves a confession of the plaintiff's declaration, and shows that he was entitled to maintain his action.   In such case, therefore, the court will give judgment for the plaintiff without regard to the verdict; and this, for the reason above explained, is also called a judgment as upon confession.

No case is cited, where such a motion has been sustained under the general issue.

*Mr. Woodward,* for the plaintiff, in reply to *Mr. Whicher.* The bill of exceptions contains and sets forth a motion for a new trial, for reason that the verdict was against the evidence, and that the verdict was unsustained by the evidence.

That evidence was, on the part of the defendant, the matter set forth in the affidavit; and on the part of the plaintiff, the fact of the possession of the note, and Fennimore's offer to pay it on certain conditions.

The plaintiff's debt is thrown into a precarious condition by inexperience. Justice requires a new trial, if it can be granted consistently with the rules of law; and I believe it can, with entire consistency.

Is the evidence sufficient to warrant a verdict for defendant? The affidavit says he settled the debt, &c. The word settle is ambiguous; it has many meanings. In relation to pecuniary demands, it more commonly means reduce to certainty. It sometimes means paid, but more rarely.

But its meaning here is fixed by the subsequent statement, that he settled the demand, in the following manner. Now if that following manner does not amount to a payment, then there is no payment. What was this manner? By assigning a judgment to one creditor for the benefit of several. He nowhere says it was given or taken in payment or satisfaction.

This notice amounts to a plea of accord and satisfaction, or of payment. A plea of the former kind must surely show that the thing was taken in satisfaction. And a plea of payment would have to aver that it was taken in payment or satisfaction. 3 Blackf., 355.

But farther: the assignment or transfer of a note, or other chose in action, is not a payment of a former demand, unless it be so expressly taken, and it must be so alleged. Chit. on Con., (Ed., 1842,) pp. 749, 750, *n.* (2,) 767, *n.* (1,) 772; 2 Pick., 204; 2 John., 455; 4 *ib.,* 296; 6 *ib.,* 110; 9 *ib.,* 410.

It seems to me, therefore, that neither the form nor the substance of this affidavit, and its averments, amount to a payment or satisfaction, even when taken alone.

But how much is the force of the facts in the affidavit lessened by the evidence of the plaintiff? 1. Showing possession of the note, thus manifesting clearly that it was not considered paid by the parties. 2. By Fennimore's offer to pay the note, on certain conditions, and so making it clear that he did not regard it as paid.

The court will perceive that the affidavit is not a clear, open,

and definite statement of a payment; but an artful, carefully-drawn, ambiguous instrument.

Justice requires a new trial, that the facts of the case may be investigated. I trust the court will grant it, and we will cheerfully submit to the terms which they may prescribe.

On granting a new trial, see 1 Blackf., 229; 3 Scam., 486; 2 *ib.*, 351.

Whether a verdict is against evidence or not, is a question that cannot be raised on a bill of exceptions. *Foot* v. *Wisnall*, 14 John., 305; *Whiteside* v. *Jackson*, 1 Wend., 418; 7 Wend., 471.

The notice appended to the plea is no part of the record. *Pledgar* v. *Glover*, 2 Porter, 174.

The case in 14 John. is not in point. The abstract is too broad. See the opinion of the court.

The case in 7 Wend. is that the facts merely, unmingled with law, cannot be inquired into by a court on error.

But whether the verdict is against law on the facts, or whether the verdict is supported by the evidence, taking law and facts in view, is another question. See 1 U. S. Dig., 414; §§ 88, 416, 131.

*Opinion by* GREENE, J. Assumpsit on a promissory note. The defendant, Fennimore, proved, on the trial below, that the note and other claims against him, were settled by assigning a judgment in his favor to one Fullerton, for the benefit of certain creditors, including the plaintiffs; and that the judgment was still held and controlled by said creditors. On the contrary, the plaintiffs not only showed themselves in possession of the note; but also that, about the time suit was commenced, the defendant proposed to pay the full amount of the note, upon certain terms, which were declined by plaintiff's attorney. Upon this evidence the jury found a verdict for the defendant. After the jury had retired, and made up their verdict, and on having returned to deliver it to the court, the plaintiffs moved for a nonsuit, which was very properly overruled. The 18th section of the practice act, *Rev. Stat.*, p. 472, pro-

Jones *v.* Fennimore.

vides that, "no plaintiff shall suffer a nonsuit on the trial, unless he does so before the jury retire from the bar." This, connected with the preceding portion of the section, clearly applies to the retiring of the jury to consider of their verdict. After they have made it up, and, perhaps, told the result of their deliberations to bystanders, it is too late for the plaintiff to avail himself of a nonsuit. By the common law practice, the plaintiff is entitled to a voluntary nonsuit, at any time before the jury actually deliver their verdict; but our statute limits that practice, and precludes the right after the jury retire from the bar to make up their verdict.

Motions were made for a judgment, *non obstante veredicto;* and also for a new trial, which were respectively overruled, and judgment rendered according to the verdict.

In deciding this case, it is unnecessary to enlarge upon the action of the court below, in declining to render judgment for the plaintiffs, notwithstanding the verdict of the jury. Considering the defective character of the plea in avoidance, which appears to have been set up as an accord and satisfaction of the note, such a judgment might have been rendered with propriety; but doubtless the legal rights of the parties in this case would have been better advanced by favoring the application for a new trial.

From our view of the evidence, we think there are strong, probable grounds to believe, that the merits of the case have not been fully and fairly tried; and that a complete development of all the facts may produce a very different result. The law contemplates a full hearing and a fair trial to every man; and if, by any reasonable cause, a party has been unable to present the merits of his case to the jury, it is but just that he should be granted another trial. In most cases, the question of granting a new trial is confined to the sound discretion of the court below; but still, the decision upon such a question may become the subject of review and correction in this court; especially when the reasons and evidence for a new trial appear of record, and come within the well recognized rules of law.

10

In this case, the judgment referred to in the evidence appears to have been assigned for the benefit of several creditors, as a collateral security to guaranty the payment of their demands against the defendant, but not as payment or satisfaction of those demands.   But the jury evidently regarded the negotiation as an accord and satisfaction of the note.   Had they been instructed in the law regulating accord and satisfaction, they might not have arrived at such a conclusion, in relation to the defendant's discharge from liability.

To constitute a legal bar to an action, the satisfaction must have been full, perfect, and complete.   *Clarke* v. *Hinsmore*, 5 New Hamp., 136 ; *Bump* v. *Phœnix*, 6 Hill, 310.   It should be alleged and proved that the assignment of the judgment was made and accepted in full satisfaction of the note, and not executed merely as security or contingent means of payment.   *Sinard* v. *Patterson*, 3 Blackf., 353 ; *State Bank* v. *Littlejohn*, 1 Dev. and Bat., 563.   In the case of *Artcher* v. *Zeh*, 5 Hill, 200, the opinion states that " the agreement leaves it equal whether the advisement or credit was not to be the usual conditional one, to become absolute on the assigned claim proving available.   Such is the legal construction of an agreement to take a claim against a third person, to be applied upon a precedent debt, and the law will not hold it to be an absolute payment, unless there be an express agreement to take it as, *per se*, a satisfaction.   In the absence of such an agreement, the law will not compel the creditor to apply it in discharge, till the money be actually received."   The opinion goes farther, and asserts, that even the transfer of a negotiable note against a third person would not have been a satisfaction, unless made upon terms indicating an absolute discharge or payment.   But in this case there is other testimony tending to remove all reasonable doubt.   The plaintiffs not only prove themselves in possession of the note, but also establish the additional evidence of indebtedness, by proving the defendant's promise to pay them the full amount of their claim upon certain conditions.   Had the judgment been assigned for the purpose of paying the note, the inference is,

that it would have been given up to the defendant for cancellation, or at least a receipt given in satisfaction of the indebtedness.

Viewing all the evidence as it appears before us, and the nature of the proceedings below, we think that justice loudly demands a new trial, and that the court erred in refusing it; but as the claim of the plaintiffs was placed in jeopardy in the court below by their own mismanagement, the costs of this court will be. adjudged against them.

Judgment reversed.